IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VITAL PROTEINS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 22 C 02265 |
| | ) | |
| ANCIENT BRANDS, LLC D/B/A ANCIENT NUTRITION, | ) ) ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendant. | ) | |

## ORDER

For the reasons set forth in the Statement below, the defendant's motion to dismiss for lack of standing and for failure to state a claim [14] is denied. Defendant is directed to answer the complaint by January 25, 2023. This case is referred to the assigned Magistrate Judge for all discovery scheduling and supervision, as well as any settlement conference the parties may jointly seek.

## STATEMENT

The parties are competing sellers of collagen peptides supplements. The plaintiff, Vital Proteins LLC, has sued Ancient Brands, LLC for false advertising and unfair competition under federal and Illinois laws. Vital claims that Ancient is making false and/or misleading statements on its product labels and advertising materials relating to the temporal efficacy of several of its products and the ingredient composition of one of its products. Vital seeks injunctive and monetary relief as a competitor in the market. Ancient has moved to dismiss Vital's complaint on the bases that Vital lacks constitutional and statutory standing since it has not adequately pled its injury and that Vital has failed to state a claim because it has not plausibly alleged the falsity of Ancient's statements at issue.

I.    **Constitutional and Statutory Standing**

Ancient argues that this Court lacks subject matter jurisdiction over Vital's claims because Vital does not have standing under Article III of the Constitution, which limits the judicial power to resolving "Cases" and "Controversies." Alternatively, Ancient contends that Vital lacks statutory standing under the Lanham Act because Vital has not plausibly alleged any injury traceable to Ancient's supposedly false statements.

To have standing under Article III, Vital must allege that it has "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). The injury must also be "fairly traceable to the challenged action of the defendant," and "it must be likely, as opposed to merely speculative, that the injury will be

redressed by a favorable decision." *Id*. at 560-61 (cleaned up). The burden of establishing these elements is on Vital, the party invoking federal jurisdiction. *See id*. at 561. "A district court, in ruling upon an issue of subject matter jurisdiction, must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiffs." *Kelly v. Med-1 Solutions, LLC*, 548 F.3d 600, 604 (7th Cir. 2008).

As for section 1125(a) of the Lanham Act, the statute authorizes suit by "any person who believes that he or she is likely to be damaged by a defendant's false advertising." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014); 15 U.S.C. § 1125(a). "[A] plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark*, 572 U.S. at 133. Although Vital's statutory standing does not bear on this Court's jurisdiction to hear this case, the Court will analyze constitutional and statutory standing together because the issues overlap significantly.

In its complaint, Vital alleges that Ancient's "false and misleading claims have a tendency to deceive and/or have deceived the relevant purchasing public." Compl. ¶ 25. Further, Vital alleges that the false/misleading claims "will cause or have caused harm to Vital['s] business, reputation, goodwill, sales, and profits," because they (a) lead retailers to provide Ancient with favorable placement on shelves and (b) induce consumers to pick Ancient's products over Vital's because they will consider Ancient's products superior to Vital's. Compl. ¶ 26. Ancient argues that Vital's allegations of injury are conclusory, speculative, vague, and devoid of factual support. The Court disagrees. Vital's alleged injuries are sufficient to satisfy the standards for constitutional and statutory standing.

Ancient first takes aim at Vital's "causes or will cause" language with respect to its injury. Ancient argues that this language is insufficient because Article III only confers standing to plaintiffs who have already suffered an injury or for whom an injury is "imminently threatened." Vital's use of the "or will cause" language does not render its injuries insufficiently alleged. The Court infers from the complaint that Vital's products are already on the market with these allegedly false/misleading statements on their packaging, and the advertisements that also contain such statements are already released to the public. As such, Vital has sufficiently alleged the existence of harm and/or the risk of future harm to its sales, at least from a temporal standpoint.[1] The Court will not decline to exercise jurisdiction based on the plaintiff's (perhaps gratuitously) cautious wording of the timing of its injuries in its complaint.

---

[1] As for the immediacy of harm under the Lanham Act, the statute requires that the plaintiff allege that sales of its product are **likely** to suffer due to the defendant's supposed misrepresentations. *Par Sterile Prods., LLC v. Fresenius Kabi USA LLC*, No. 14 C 3349, 2015 WL 1263041, at *3 (N.D. Ill. Mar. 17, 2015).

Ancient does not dispute that the parties are direct competitors actively selling collagen peptide nutritional supplements,[2] except to say that "[i]f consumers bought Ancient Nutrition's products because they wanted benefits within 24 hours (the supposedly untruthful claim), there is no reason to believe that they would buy Vital's products, which Vital admits do not provide such benefits." Ancient's Memo. (ECF No. 15) at 9. In other words, Ancient claims that Vital's theory that Ancient's one-day results claim falsely "implied superiority" over Vital's products fails "because Vital's Complaint fails to explain why consumers looking for relief within one day would purchase Vital's products, which do not provide such benefits." Ancient's Reply (ECF No. 21) at 5. This point misses the mark. Vital does not have to allege that consumers who are specifically ***looking for immediate relief or benefits*** would purchase Vital's product if not for Ancient's allegedly false/misleading statements about immediacy of relief when taking Ancient's product. That would be unnecessarily narrow. Rather, it is reasonable to infer that a consumer looking for the more effective supplement, without exclusive regard to the immediacy of its benefits, may conclude that Ancient's products are generally superior to Vital's because Ancient's packaging and advertising states that its benefits are clinically shown to come as quickly as one day, whereas Vital's do not, and this would result in lost sales for Vital.

Finally, Ancient attempts to undermine Vital's "retailer placement" theory by arguing that (a) the Lanham Act does not protect against harms to downstream commercial actors,[3] and (b) Vital's complaint fails to articulate the operation of the theory, *i.e.*, how exactly the false/misleading statements could result in differential treatment by retailers and how that differential treatment in turn results in harm to Vital. First, Vital is not suing to remedy any harm to retailers; indeed, its claims do not relate to any harm done to retailers who spatially prioritize Ancient's products. Its claim is that its own business is harmed because the false/misleading statements deceive retailers regarding the comparative benefits of the parties' products, leading the retailers to provide favorable placement for Ancient's products. According to Vital, this preferential treatment induces consumers to prefer Ancient's products because they associate better shelf placement with a superior product, leading to increased Ancient sales and decreased Vital sales. The directness of this particular theory of injury is both speculative and attenuated, and it is unlikely sufficient to confer Vital with standing under the Lanham Act. Recall that the statute confers standing when "a plaintiff suing under § 1125(a) [shows] economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark*, 572 U.S. at 133. Nonetheless, because Vital's "implied superiority" theory of injury succeeds in conferring standing, it is not necessary for this theory to succeed as well for Vital's claims to survive dismissal on the pleadings.

---

[2] It should be noted, for relevant background, that Ancient's products are made using a natural eggshell membrane ("NEM") ingredient it obtains from a third party called Stratum Nutrition. Based on the pleadings, it appears that Vital's products do not contain this ingredient.

[3] "For example, while a competitor who is forced out of business by a defendant's false advertising generally will be able to sue for its losses, the same is not true of the competitor's landlord, its electric company, and other commercial parties who suffer merely as a result of the competitor's 'inability to meet [its] financial obligations.'" *Lexmark*, 572 U.S. at 134 (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458 (2006)).

**II.   False Statements**

"A plaintiff may claim a false commercial advertising statement by the defendant in one of two ways: through '(1) commercial claims that are literally false as a factual matter; or (2) claims that may be literally true or ambiguous, but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers.'" *Evolve Biosystems, Inc. v. Abbott Laboratories*, 19 C 5859, 2022 WL 846900 (N.D. Ill. Mar. 22, 2022) (quoting *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir. 1999)).

The parties dispute whether the Rule 9(b) heightened pleading standard applies to false advertising claims, though Vital acknowledges there is authority in the Circuit supporting the application of the heightened standard. The Court is convinced that the Seventh Circuit in *Gensler v. Strabala*, 764 F.3d 735 (7th Cir. 2014) answers the question. In deciding a Lanham Act claim, the Seventh Circuit stated that the plaintiff charged the defendant "with a form of fraud, so we would expect its complaint to allege with particularity the nature of the grievance—what [the defendant] said and why it is false. See Fed. R. Civ. P. 9(b)." *Id.* at 737. The same applies to this case: Vital is essentially charging Ancient with fraud.

The following are the allegedly false statements on Ancient's labels, advertisements, and third-party websites offering Ancient's products for sale that Vital lays out in paragraph 12 of its complaint:

(a) "CLINICALLY STUDIED INGREDIENTS FOR RESULTS IN AS LITTLE AS ONE DAY";

(b) "Collagen Peptides is made with clinically studied ingredients to deliver results in as little as one day";

(c) "Ancient Nutrition is the only leading collagen protein brand on the market currently with a proprietary fermented collagen ingredient backed by human clinical studies, proven to provide real results as early as day one";

(d) "Collagen Peptides brings you head-to-toe results in as little as one day";

(e) "Reduced exercise-induced joint discomfort as early as Day 1";

(f) "Reduced collagen degradation with noticeable results in as little as 3 days"; and

(g) Misleading labeling regarding the amount of collagen in Ancient Nutrition's Vegetarian Collagen Peptides.[4]

---

[4] Vital does not claim the labeling regarding the amount of collagen in the Vegetarian Collagen Peptides is literally false, but that it is misleading. It has "10g" in large letters, the words "PER SERVING," in smaller font directly under it, and "COLLAGEN + PREBIOTIC FIBER," in curved font beneath it (the same size as the "PER SERVING" font beneath the "10g." An image of the label in question can be found on page 8 of the complaint. Vital claims that this label is misleading because consumers are likely to be misled into thinking a serving contains ten grams of collagen only. As mentioned, Vital concedes that a serving of the product actually does contain a ten-gram combination of collagen and acacia gum, which is a prebiotic fiber.

Vital must plausibly allege facts that support the three following types of false advertising claims in its complaint:

(1) The "one-day" statements in (a)-(e) and "three-day" statement in (f) are literally false;
(2) Even if it is true that one or more clinical studies provide factual support to Ancient's statements in (a)-(e)—*i.e.*, that its products confer some benefits, namely joint pain and stiffness relief, within the short timeframes—no studies support the broader host of benefits that are promoted and positioned on the labels and ads next to the one- or three-day results statements, thus misleading customers by creating a false impression about the scope of any benefits shown through clinical studies;[5]
(3) The labeling described in (g) is misleading in such a way that it can be considered generative of a false impression.

Ancient does not attack the sufficiency of the complaint as to (2), the second type of falsity claim, in its motion to dismiss. Only whether Vital's allegations of falsity with respect to (1) and (3) are adequate is at issue.

Vital's allegations with respect to the explicit falsehood of the timing-related statements are essentially as follows: Vital isn't aware of any clinical or peer-reviewed studies supporting Ancient's claims, upon information and belief Ancient doesn't have any, and the one study on which Ancient is likely relying to support the truth of its claims does not actually provide that support.

Ancient argues that Vital's allegations regarding falsity are too generic to survive under Rule 9(b). But little more could be expected of a plaintiff in Vital's position. What else could a competitor of a business making such statements about clinical studies supporting quick health benefits be able to plead with regard to their falsity? It could only plead, like Vital does, that (1) the defendant makes those statements on its labels and ads, which are now being presented to consumers in stores and online (the "who," "what," "when," and "where" of the fraud), (2) the defendant does so for financial gain (the "why"), (3) the plaintiff-competitor is unaware of any clinical studies supporting that statement, and (4) upon information and belief, the defendant can't point to any such studies. Here, Vital has gone a step further and plausibly alleged that the one relevant clinical study it has found does not actually support Ancient's claims. Further, it can be reasonably inferred from the complaint that Vital, as a longtime participant in the collagen peptides market, is more likely to be aware of such clinical studies—if they do indeed exist—than the average person or entity.

There remains the question of whether the Stratum Nutrition study, which Vital referenced and hyperlinked to in its complaint and Ancient appended to its motion to dismiss, actually shows a decrease in joint pain or stiffness within a single day. If that were the case—*i.e.*, Ancient's

---

[5] For example, Ancient's "orange flavor" collagen peptides product positions the "Clinically studies ingredients for results in as little as one day" language directly above the statement, "Supports a healthy immune system." Compl. at p. 8. Vital also claims that the "head-to-toe results" statement in (d) creates a misleading impression that the scope of benefits is broader than what it actually may be according to any clinical studies.

statements are substantiated—Vital would have essentially pleaded itself out of court on its explicit falsity claims. *See Hackman v. Dickerson Realtors, Inc.*, 520 F. Supp. 2d 954, 963-64 (N.D. Ill. 2007) ("[D]ocuments that defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim."); *Thompson v. Illinois Dep't of Pro. Regul.*, 300 F.3d 750, 754 (7th Cir. 2002) ("[W]here a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim."). Ancient points to some excerpts of the Stratum Study indicating some joint pain and stiffness relief for NEM users occurring within one day; however, Vital argues that the study explicitly states those results were not statistically significant. Ancient replies that the study nevertheless "showed a decrease in joint pain and stiffness beginning on the first day of the study …. [T]here are many reasons why portions of a study's results might not be statistically significant, including a small sample size or other constraints." Reply at 7-8. This should not be so difficult: If the relevant Stratum Study results are not statistically significant, then the results don't "show" anything; there is no statistical basis to attribute those results to anything but randomness. It would therefore be inappropriate for the Court to find at this stage that the Stratum Study contradicts Vital's claims of falsehood. Vital has not pleaded itself out of court with regard to the explicit falsity of the "clinically studied" statements by referring to the Stratum Study.

Finally, Ancient argues that Vital has failed to state a claim that Ancient's "10g per serving" statement on its Vegetarian Collagen Peptides product is misleading. Vital asserts that:

> The "10g" claim is prominently displayed over the much smaller words "collagen + prebiotic fiber." Ancient Nutrition's Vegetarian Collagen Peptides contains significantly less than 10g of collagen per serving. This constitutes a plausible allegation that Ancient Nutrition's labeling is likely to mislead consumers into believing that they will receive a 10g serving of collagen.

Vital Response (ECF No. 20) at 13 (citation omitted). Ancient argues that Vital fails to state a plausible claim that Vital falsely advertises by misleading customers into a false impression about the quantity of collagen in a 10g serving because Vital has not alleged "any factual basis for its belief that consumers are likely to be misled" by the label. Memo. at 12-13.

"[W]here plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 477 (7th Cir. 2020). But it is not fanciful to read Ancient's label as indicating that it provides 10 grams per serving of collagen and 10 grams per serving of probiotic fiber rather than 10 grams of a mixture containing an unknown quantity (except that the quantity is something less than 10 grams) of each of the two ingredients referenced. The use of a "plus" sign rather than the word "and" only exacerbates the ambiguity; is it intended to signify that the two ingredients are added together to total 10 grams (as Ancient would presumably argue), or is it used as a shorthand for "plus" in that word's sense as a conjunction much like "and"? *Plus*, Ancient provides no reason to explain why it is unreasonable to understand this label text to trumpet a specific quantity (10 grams) of collagen—the product's feature ingredient—rather than reading it in a manner that allows consumers to infer that it might contain very little collagen per serving. Ancient's reading of the label is not unreasonable, but in moving

to dismiss this claim, its burden is not to offer a reasonable alternative to Vital's reading of the label but to demonstrate—as a matter of law—that Vital's reading is unreasonable. It has not met that burden; the Court concludes that a reasonable consumer could read this portion of the label either way. *See*, *e.g.*, *Bell*, 982 F.3d at 476-77 (holding that a label reading "100% Grated Parmesan Cheese" can plausibly be read as claiming that the product was 100% grated, 100% Parmesan, or 100% cheese). Accordingly, Ancient's motion to dismiss is denied.

Dated: January 11, 2023

John J. Tharp, Jr.
United States District Judge