IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VITAL PROTEINS, LLC, | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | No. 1:22-cv-02265 |
| v. | ) | |
| | ) | District Judge John J. Tharp, Jr. |
| ANCIENT BRANDS, LLC D/B/A | ) | |
| ANCIENT NUTRITION, | ) | |
| | ) | Magistrate Judge Jeffrey I. Cummings |
| Defendant/Counter-Plaintiff. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Vital Proteins, LLC has filed a motion for a partial stay of discovery, (Dckt. #44), pending the resolution of its motion to dismiss Defendant Ancient Brands, LLC's three counterclaims pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). (Dckt. #42). Specifically, Vital seeks to stay only that discovery which pertains to Ancient Nutrition's counterclaims, which includes: (1) the deposition of Jennifer Aniston, the television and movie star who serves as Vital's "Chief Creative Officer"; (2) the deposition of Kurt Seidensticker, Vital's founder and former Chief Executive Officer; and (3) its responses to specified interrogatories (nos. 8-10) and document production requests (nos. 28-34 and 38-42), which concern and require the participation of Aniston and Seidensticker. (The parties have proceeded apace with discovery related to Vital's claims.). For the reasons set forth below, Vital's motion for a partial stay of discovery is granted.

1

I.  BACKGROUND

   A.  **The parties' respective claims.**

Vital and Ancient Nutrition are two companies that sell nutritional supplements, including collagen peptide supplements. On April 29, 2022, Vital filed its complaint alleging that Ancient Nutrition has engaged in false advertising and unfair competition in violation of the Lanham Act (15 U.S.C. §1125(a)), false advertising in violation of the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510/2(a)), and common law unfair competition. In particular, Vital alleges that Ancient Nutrition uses "false and misleading statements in its advertising materials and on its product labeling" for its collagen peptide products, which "will cause or have caused harm" to Vital's business. (Dckt. #1, ¶¶10, 26).

After the District Court denied its motion to dismiss, Ancient Nutrition filed its answer and three counterclaims which mimic the three claims alleged by Vital. The thrust of Ancient Nutrition's counterclaims are the allegations that Vital falsely advertises its own products by promoting them through Aniston – whom it touts as its "Chief Creative Officer" even though she has no day-to-day role at Vital – and that Vital's use of Aniston for promotional purposes will cause consumers to purchase its collagen products rather than those of Ancient Nutrition. (Dckt. #39, ¶¶12-13, 17). Vital thereafter moved to dismiss Ancient Nutrition's counterclaims with prejudice on the grounds that giving Aniston the title of "Chief Creative Officer" does not give rise to a cause of action and that Ancient Nutrition failed to: (1) meet Rule 9(b)'s pleading standard; (2) allege false or misleading statements concerning Aniston's use of Vital's products; and (3) allege any other false or misleading statements. (Dckt. #43).

**B.    The discovery that Vital seeks to stay pending the resolution of its motion to dismiss.**

On January 20, 2023, shortly before it filed its answer and counterclaims, Ancient Nutrition served interrogatories, document production requests, requests for admission, a notice to depose Aniston, and a subpoena on Seidensticker calling for him to produce documents and sit for a deposition. Vital filed its motion to stay the following written discovery because it relates only to Ancient Nutrition's counterclaims:

**Interrogatory No. 8:**
Identify any advertising you removed from Your Website or social media relating to Your collagen products since April 2017.

**Interrogatory No. 9:**
Describe Jennifer Aniston's role at Vital Proteins, her responsibilities as Chief Creative Officer, any responsibilities she has with respect to advertising or content creation for Vital Proteins, and compensation she has received related to her role and responsibilities.

**Interrogatory No. 10:**
Identify all advertising for Vital Proteins' collagen products in which Jennifer Anniston appeared or for which she provided any input or approval for the content of the advertising, and the content of such advertising.

**Request for Production ("RFP") No. 28:**
All Documents reflecting advertising of Your collagen products, including, but not limited to, Your labels, website advertising, and social media posts.

**RFP No. 29:**
All Documents and Communications reflecting any decision by You to remove any of advertising of Your collagen products from Your website.

**RFP No. 30:**
All videos made by Kurt Seidensticker regarding Your collagen products, including, but not limited to, the video entitled "Our Story and How it Got Started."

**RFP No. 31:**
All Documents and Communications that support or refute your claim that Your collagen products are "designed to help support healthy muscles and joints."

3

**RFP No. 32:**
All Documents and Communications that support or refute Your claim that Your collagen products can "keep[] joints flexible, comfortable, and healthy."

**RFP No. 33:**
All Documents and Communications that support or refute Your claim that Your collagen products "help[] you push harder, faster and longer, getting you back on your feet and helping you dig deeper into every bit of movement.

**RFP No. 34:**
All Documents and Communications regarding Your decision to add the question "When can I expect to see results?" to the FAQ section of Your website in or around June 2021.

**RFP No. 38:**
All Documents and Communications regarding any complaints by consumers or other third parties about Vital Proteins' collagen products or advertising for Vital Proteins' collagen products.

**RFP No. 39:**
All Documents and Communications concerning any testing, study, or analysis You have commissioned, performed, obtained, received, or requested regarding Vital Proteins' collagen products or their ingredients.

**RFP No. 40:**
All Documents and Communications concerning any sourcing of ingredients for Vital Proteins' collagen products.

**RFP No. 41:**
All Documents and Communications regarding Jennifer Aniston's role at Vital Proteins, including, without limitation, any contractual agreement(s) that she has with You.

**RFP No. 42:**
All Documents and Communications regarding any advertising for Vital Proteins' collagen products in which Jennifer Aniston appeared or for which she provided any input or approval for the content of the advertising.

(Dckt. #46-1 at 6-7; Dckt. #46-2 at 11-13). Vital also seeks to stay the depositions of Aniston and the execution of the subpoena for the deposition of Steidensticker and document rider (which calls for Steidensticker to produce documents such as those listed in the above RFPs to Vital,

4

documents pertaining to his communications with various third parties, and documents related to his departure from Vital). (Dckt. #46-5 at 2, 4-11).

## II. LEGAL STANDARD

This Court has broad discretion in managing discovery under Rule 26 and may, for good cause, control its sequence to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P 26(c)(1); *see Crawford-El v. Britton*, 523 U.S. 574, 598-99 (1998). In determining whether a moving party has met its burden of showing that good cause exists to grant a stay of discovery, courts consider: (1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues in question and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and on the court. *Garrick v. Moody Bible Inst.*, No. 18 CV 573, 2021 WL 5163287, at *3-4 (N.D.Ill. Nov. 5, 2021); *Harper v. Cent. Wire, Inc.*, No. 19 C 50287, 2020 WL 5230746, at *1 (N.D.Ill. Sept. 2, 2020); *Mac Naughton v. Asher Ventures, LLC*, No. 17 CV 4050, 2018 WL 11361070, at *2 (N.D.Ill. Feb. 27, 2018).

Moreover, while the filing of a motion to dismiss does not automatically stay discovery, *SK Hand Tool Corp. v. Dresser Indus., Inc.*, 852 F.2d 936, 945 (7th Cir. 1988), staying discovery during the pendency of such a motion is "not disfavored and [is] often appropriate where the motion to dismiss can resolve the case." *Bilal v. Wolf*, No. 06 C 6978, 2007 WL 1687253, at *1 (N.D.Ill. June 6, 2007) (citing cases). Accordingly, courts have considered "the numerosity and substantiality of the bases for dismissal raised" (including whether – as here – dismissal is sought based on a failure to satisfy Rule 9(b)) when determining whether a stay is warranted. *Rao v. JPMorgan Chase Bank, N.A.*, No. 21 C 1361, 2021 WL 4927415, at *1 (N.D.Ill. May 12, 2021); *Hayes v. Board of Education for City of Chicago*, No. 21 C 1198, 2021 WL 8153761, at *1

5

(N.D.Ill. Dec. 22, 2021) (the nature of issues presented by a motion to dismiss is a consideration in determining whether to stay discovery); *U.S. ex rel. Liotine v. CDW-Gov't. Inc.*, No. CIV. 05-033-DRH, 2009 WL 720958, at *1-2 (S.D.Ill. Mar. 18, 2009) (granting stay of discovery based on pending motion to dismiss for failure to meet the Rule 9(b) standard); *see also New England Carpenters Health and Welfare Fund v. Abbott Laboratories*, No. 12 C 1662, 2013 WL 690613, at *2 (N.D.Ill. Feb. 20, 2013) (finding that "a stay might be appropriate where the complaint was utterly frivolous, or filed merely in order to conduct a fishing expedition") (internal quotation marks omitted).

### III. ANALYSIS

Vital asserts that discovery should be stayed pending the resolution of its motion to dismiss because: (1) the discovery that Vital seeks to stay is burdensome, intrusive, and objectionable; (2) Ancient Nutrition will suffer no prejudice from a stay; and (3) the deficiencies of Ancient Nutrition's counterclaims weigh in favor of a stay. The Court will address each point in turn.

#### A. The discovery that Vital seeks to stay is related to Ancient Nutrition's counterclaims and will impose a substantial burden on Vital, Seidensticker, Aniston, and the Court.

"To avoid the cost and burden of potentially unnecessary discovery, courts frequently stay discovery pending a motion to dismiss the complaint . . . 'where . . . discovery may be especially burdensome and costly to the parties.'" *Aland v. U.S. Dept. of the Interior*, No. 22-cv-5821, 2022 WL 18027569, at *4 (N.D.Ill. Dec. 30, 2022), *quoting DSM Desotech Inc. v. 3D Systems Corp.*, No. 08 CV 1531, 2008 WL 4812440, at *2 (N.D.Ill. Oct. 28, 2008). Here, Vital asserts – and Ancient Nutrition does not dispute – that the discovery it seeks to stay (which is outlined above in Section I(B)) pertains to Ancient Nutrition's counterclaims. Thus, the

6

discovery may prove unnecessary if Vital's motion is granted. The parties dispute, however, whether the discovery at issue is sufficiently "burdensome and costly" so as to support a stay pending the resolution of Vital's motion.

The Court finds that responding to the discovery at issue would impose a significant burden on Vital due to the sweeping nature of the requests.[1] Vital produces numerous products including "Vital Protein Original collagen Peptides, as well as a wider variety of powders, supplements, drinks, bars, and gummies." (Dckt. #46-5 at 15; Dckt. #53 at 12). Nonetheless, Ancient Nutrition's requests for production demand the production of "*all* documents and communication[s] related to topics such as testing, advertising, complaints, sourcing, or discussions with third parties for *all* of Vital Proteins' collagen products *and* ingredients in those products from April 2019 to the present." (Dckt. #45 at 7) (citing various RFPs). The rider to Ancient Nutrition's subpoena to Seidensticker (Vital's former CEO) is sweeping, somewhat duplicative of the RFPs that Ancient Nutrition served on Vital, and burdensome for Seidensticker to respond to. (Dckt. #45 at 7-8 (Ancient Nutrition has demanded, among other things, that Seidensticker produce all documents and communications regarding the advertising for Vital's collagen products); Dckt. #53 at 10).

Furthermore, allowing Seidensticker's deposition to proceed at this time would impose a potentially unnecessary burden on him to the extent that Ancient Nutrition questions him regarding the counterclaims, which would be dismissed if Vital's motion is granted. Vital has also stated its intent to assert the "apex doctrine" to defer or preclude Seidensticker's deposition until less burdensome channels of discovery have been exhausted by Ancient Nutrition. (Dckt.

---

[1] The Court does not reach the issue of whether the discovery is – as Vital asserts (Dckt. #45 at 7) – *unduly* burdensome and not proportionate to the needs of the case. Resolving the appropriate scope of the RFPs at issue on this motion will most likely require the Court's intervention at some point in the future.

#45 at 13; Dckt. #53 at 10).² Finally, Ancient Nutrition – which acknowledges that it seeks to question Aniston regarding its counterclaims and unclean hands affirmative defense – offers only speculation to support its contention that Aniston has any knowledge related to Vital's claims. (Dckt. #51 at 14-15).³ Consequently, if Vital's motion to dismiss is granted, there would be no legitimate reason for Ancient Nutrition to take Aniston's deposition based on the record presently before the Court.

      In sum: the discovery at issue – if not stayed – will impose a substantial burden on Vital, Seidensticker, and Aniston. Moreover, the Court would be required to expend judicial resources to resolve disputes regarding the scope of the discovery at issue and whether Ancient Nutrition is entitled to depose Seidensticker and Aniston at this time (or at all) that it may not need to resolve if Vital's motion to dismiss the counterclaims is granted. The fact that staying discovery would preserve the resources of the parties and the Court if Vital's motion proves successful supports a stay. *See, e.g.*, *Garrick*, 2021 WL 5163287, at *4 ("the burden factor likewise tips in favor of a stay . . . [where] [s]taying discovery would preserve the parties' resources if [defendant's] appeal proves successful."); *Hayes*, 2020 WL 5230746, at *1 (considering whether the stay will reduce the burden of litigation on the parties or the court); *Mac Naughton*, 2018 WL 11361070, at *2 (granting a stay where it would preserve the parties' resources).

---

² Although Ancient Nutrition contends that the apex doctrine does not apply to *former* high-level executives, (Dckt. #51 at 12), this Court and many others have held that the doctrine *is* applicable to former executives and officials. *Lee v. City of Chicago*, No. 20 CV 1508, 2021 WL 2399999, at *3 (N.D.Ill. June 11, 2021) (citing cases). The question of whether the apex doctrine should apply in this case to defer or preclude the deposition of Seidensticker will be determined after further briefing from the parties if need be.

³ Ancient Nutrition claims that Aniston has knowledge of Vital's claims because *it* listed Aniston as a person with knowledge in its Rule 26(a)(1) disclosures; however, Vital – which is in a position to know what knowledge Aniston actually has – did *not* list her as a person with knowledge in its Rule 26(a)(1) disclosures. (Dckt. #53 at 10).

### B. Ancient Nutrition's unclean hands affirmative defense does not provide a legitimate basis for proceeding with the discovery at issue at this time.

Notwithstanding this, Ancient Nutrition argues that the discovery at issue should not be stayed because it relates to Ancient Nutrition's "unclean hands" affirmative defense to Vital's claims. (Dckt. #51 at 11). However, "the unclean hands doctrine applies only 'to one tainted with inequitableness or bad faith *relative to the matter in which he seeks relief*.'" *Redbox Automated Retail, LLC v. Xpress Retail LLC*, No. 17 C 5596, 2018 WL 950098, at *4 (N.D.Ill. Feb. 20, 2018), *quoting Packers Trading Co. v. CFTC*, 972 F.2d 144, 148 (7th Cir. 1992) (emphasis in original). Thus, the unclean hands doctrine is applicable here only to the extent that Vital's hands were "unclean" with respect to Ancient Nutrition's alleged false advertising and unfair competition. *See OSF Healthcare Sys. v. Banno*, No. 08-1096, 2019 WL 431963, at *5 (C.D.Ill. Jan. 29, 2010) ("Plaintiff's claims are based on Defendant's fraudulent billing to Caterpillar for Defendant's outpatient services . . . In order for the unclean hands . . . defense[] to apply, there would need to be some inference that Plaintiff acquiesced in [or] otherwise participated in or brought about *Defendant's* fraudulent billings to Caterpillar.") (emphasis in original).

Conversely, the unclean hands doctrine has no application to Ancient Nutrition's counterclaims, which concern a "different transaction" from Vital's claims: namely, that Vital allegedly engaged in false advertising and unfair competition with respect to its *own* products. *See Dyson v. Sharkninja Operating LLC*, 259 F.Supp.3d 816, 836 (N.D.Ill. 2017). In *Dyson*, a Lanham Act case with related state law claims, the court rejected the application of the unclean hands defense because defendant (Shark) asserted that plaintiff (Dyson) used a misleading/false phrase to describe its own product rather than that plaintiff engaged in bad conduct with respect to defendant's description of its product. *Id.* ("This case is about statements Shark made about

9

Shark vacuums, while Dyson's hands are supposedly unclean due to statements Dyson made about Dyson vacuums, i.e., a different transaction."). Thus, because the discovery at issue pertains only to Ancient Nutrition's counterclaims and Ancient Nutrition's unclean hands affirmative defense applies only to Vital's claims (if at all), the discovery is not relevant to this affirmative defense within the meaning of Rule 26(b)(1). Accordingly, the existence of Ancient Nutrition's unclean hands affirmative defense does not provide a basis for proceeding with the discovery at issue at this time.

    **C. Ancient Nutrition will suffer no prejudice if the discovery at issue is stayed pending the disposition of Vital's motion to dismiss.**

Ancient Nutrition does not assert that it will suffer any prejudice if the discovery at issue is stayed aside from the delay that is inherent in any stay. (Dckt. #51 at 15-16); *Rao*, 2021 WL 4927415, at *1 ("the mere delay in Plaintiff's ability to proceed to discovery caused by the stay amounts to little, if any, prejudice."). There is no imminent threat to either party's well-being, *Cf. Harper v. Cent. Wire, Inc.*, No. 19 CV 50287, 2020 WL 5230746, at *3 (N.D.Ill. Sept. 2, 2020), and Ancient Nutrition does not argue that any of the discovery relevant to its counterclaims is at risk of damage, destruction, or otherwise becoming unavailable if a stay is granted. *See Witz v. Great Lakes Educ. Loan Serv., Inc.*, No. 19-cv-06715, 2020 WL 8254382, at *1 (N.D.Ill. July 30, 2020) (a lack of showing that potentially discoverable information is likely to be lost or inadvertently destroyed favored a discovery stay). Furthermore, Ancient Nutrition does not claim that it needs any further discovery to respond to the motion to dismiss. *See Sprague v. Brook*, 149 F.R.D. 575, 577 (N.D.Ill. 1993) ("A plaintiff's right to discovery before a ruling on a motion to dismiss may be stayed when the requested discovery is unlikely to produce facts necessary to defeat the motion."). The lack of prejudice to Ancient Nutrition weighs in favor of a stay.

### D. A stay of discovery pending the disposition of Vital's motion to dismiss Ancient Nutrition's counterclaims will promote the purposes of Rule 9(b).

The parties agree that Ancient Nutrition's counterclaim for false advertising in violation of the Lanham Act must satisfy the heightened pleading standard of Rule 9(b). *See, e.g., Gensler v. Strabala*, 764 F.3d 735, 737 (7th Cir. 2014).[4] Rule 9(b) has multiple purposes including: (1) "to minimize the extortionate impact that a baseless claim of fraud can have on a firm or an individual," *Fid. Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*, 412 F.3d 745, 748 (7th Cir. 2005); (2) to deter parties from including accusations "simply to gain leverage for settlement or for other ulterior motives," *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992); (3) to protect parties from reputational harm and minimize "fishing expeditions," *Viacom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994); and (4) "to eliminate the filing of a conclusory complaint as a pretext for using discovery to uncover wrongs." *U.S. ex rel. Obert-Hong v. Advoc. Health Care*, 211 F.Supp.2d 1045, 1049 (N.D.Ill. 2002).

Rule 9(b) requires that a party allege "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." *U.S. ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc*, 772 F.3d 1102, 1106 (7th Cir. 2014). Vital asserts – and Ancient Nutrition does not deny – that Ancient Nutrition has failed to allege a single advertising claim regarding the ingredients in Vital's products that it alleges to be false or misleading. (Dckt. #53 at 6). This is a problem. *See Uni\*Quality*, 974 F.2d at 923 (holding that plaintiff's allegations did "not come

---

[4] Ancient Brands' state law false advertising and unfair competition claims rise or fall with its Lanham Act claims. *See Organ Recovery Sys., Inc. v. Pres. Sols., Inc.*, No. 11 C 4041, 2012 WL 2577500, at \*6 (N.D.Ill. July 4, 2012).

11

close to meeting Rule 9(b)'s particularity requirements" where they did not "mention any misrepresentations, much less any specifics about those misrepresentations").

Instead, Ancient Nutrition alleges that Vital's "claims regarding its collagen products and Ms. Aniston's role at its company are false, deceptive, and misleading" because, on *"information and belief,"* Aniston does not have an active day-to-day role at Vital and her "claims to be a regular user of Vital's products appear to be dubious." (Dckt. #39 at 12). The Seventh Circuit "frown[s] on making allegations 'on information and belief' in the fraud context and generally find[s] that such claims do not meet Rule 9(b)'s particularity requirement." *Cincinnati Life Ins. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013). A pleading party can overcome this general rule only if the facts constituting the fraud are not accessible to the party, the party provides "the grounds for [its] suspicions," and the proffered grounds make the allegations made on information and belief "plausible." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011). Here, the only "fact" alleged by Ancient Nutrition is an article in a British tabloid which raises a question about whether Aniston actually mixed a beverage containing a Vital product that an Instagram video purportedly showed her mixing *and* drinking. (Dckt. #39 at 12). This "fact" is disconnected from the allegations that Ancient Brand has made on information and belief, and it does not render the allegations more plausible.

Thus, for these reasons, it is apparent that Vital has raised sufficient questions regarding whether Ancient Nutrition has pled its counterclaims in compliance with Rule 9(b)'s standard to support the issuance of a stay of discovery until the issue is decided by the District Court. *See, e.g.*, *Liotine*, 2009 WL 720958, at *2-3; *U.S. ex rel. Williams v. Med. Support Los Angeles, Inc.*, No. SACV2000198CBMDFMX, 2021 WL 4816607, at *1-2 (C.D.Cal. May 7, 2021) (citing

cases). Indeed, allowing the expansive discovery sought by Ancient Nutrition to proceed at this juncture would undercut the purposes of Rule 9(b). *See, e.g.*, *Liotine*, 2009 WL 720958, at *1 ("the purpose of the heightened pleading requirement in fraud cases is frustrated by allowing a relator to make vague claims of fraud, and then permitting him to engage in discovery in the hopes of uncovering enough specifics to adequately plead a case."); *Williams*, 2021 WL 4816607, at *1 ("The idea is that a plaintiff should not be able to use an inadequate complaint to get a foot in the door and discover unknown wrongs.").

## CONCLUSION

For all of the above reasons, Vital's motion for a partial stay of discovery, (Dckt. #44), is granted. Vital's obligation to respond to Ancient Nutrition's interrogatories nos. 8-10 and its requests for production nos. 28-34 and 38-42 is stayed pending the resolution of Vital's motion to dismiss Ancient Nutrition's counterclaims. The depositions of Jennifer Aniston and Kurt Seidensticker (along with Seidensticker's obligation to produce documents pursuant to Ancient Nutrition's subpoena) are likewise stayed pending the outcome of Vital's motion to dismiss.

**DATE: September 1, 2023**

**Jeffrey I. Cummings**
**United States Magistrate Judge**